UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

APR 1 2 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-156-GWU

GEORGE T. HUBBARD,                                               PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

Hubbard

account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Hubbard

physical and mental impairments.   Varley   v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Hubbard suffered from mild carpal tunnel syndrome on the left, mild to moderate carpal tunnel syndrome on the right, longstanding scaphoid[1] non-union, mild coronary artery disease, mild degenerative changes of the lumbar spine, obesity, a medial meniscus tear of the right knee, controlled hypertension, and chemical addiction/dependence with antisocial personality traits.  (Tr. 15).  Absent consideration of substance abuse,[2] Hubbard was believed to be capable of a limited range of heavy work.  (Tr. 21). Although his past work was precluded, he was believed to be capable of performing significant numbers of medium and light level work identified by the vocational expert (VE).  (Tr. 20, 21).  Thus, benefits were denied.  (Tr. 22).

The VE had responded to written interrogatories referring to the following physical residual functional capacity parameters: (1) a need to avoid sitting more than 8 hours a day, or standing/walking more than 4 hours a day or 2 hours continuously, (2) an ability to lift "in excess of 100 pounds occasionally, 11-50

---

[1]Scaphoid is defined as "shaped like a boat; navicular [; u]sed especially in reference to the most lateral bone in the proximal row of carpal bones."  Dorland's Illustrated Medical Dictionary (27th Ed.), p. 1489.

[2]See Publ. L. 104-121.

7

pounds frequently or 10 pounds continuously," (3) an ability to carry in excess of 50

pounds occasionally, "110-20 pounds frequently or 10 pounds continuously," and (4)

no more than occasional bending, squatting, crawling or climbing, or continuous

reaching above shoulder level. (Tr. 227). Despite the somewhat confusing mix of

lifting and carrying restrictions, the VE specifically chose to identify only medium and

light jobs otherwise fitting these parameters. (Tr. 228).[3] The question is whether

these restrictions adequately described Hubbard's physical status.

The plaintiff argues that the hypothetical did not take into account legitimate

limitations related to his wrist and mental problems. Given the language of Kenneth

Starkey's report that Hubbard could be rendered "psychologically appropriate for

vocational training or placement" with six months of treatment (including for his

chemical dependency problems) and indications from the medical reviewers that

substance abuse was the category to be analyzed (e.g., Tr. 190), the undersigned

rejects the argument regarding mental factors. With regard to the wrist issue, the

result is different.

The consultative examiner (CE) was to be provided with a copy of Exhibit 4F.

(Tr. 248). This included an NCV/EMG study done in December, 2001 suggestive of

---

[3]This was a typographical-error strewn effort to track the lifting and carrying
restrictions to Consultative Examiner Kahwash. (Tr. 217). Since Kahwash did not
actually indicate any ability to carry beyond 50 pounds, the VE wisely limited the answers
to no more than medium level jobs.

8

Hubbard

bilateral carpal tunnel. (Tr. 107).[4] Not one reference was made to the worst complaints by the CE (Tr. 211-212), nor was there any acknowledgment of that specific medical record. The examiner, while noting decreased grip strength in the dominant hand (Tr. 213-214), did not do specific testing regarding Tinel's sign. Ultimately, also, the CE did not include any wrist-related diagnoses at the end of his report (Tr. 214-216), which was inconsistent even with the ALJ's specific finding the carpal tunnel syndrome and the scaphoid non-union to be "severe" impairments (Tr. 15). The only physicians to address these wrist conditions vis-a-vis functional restrictions imposed general handling restrictions (Tr. 173, 181) which were not included in the hypothetical. Thus, not all appropriate restrictions were adequately considered.

The case will be remanded.[5]

This the ___/2___ day of April, 2006.

*G. Wix Unthank*

G. WIX UNTHANK
SENIOR JUDGE

---

[4]Other records include x-rays showing a longstanding scaphoid non-union with sclerosis and some degenerative changes in the carpus. (Tr. 93). For whatever reason, this record was not provided to the consultative examiner.

[5]Upon remand, the plaintiff would do well to obtain the records concerning his recent cardiac hospitalization referred to in his testimony (Tr. 235-236) and indicated by the consultative examiner to potentially suggest a "worrisome" escalation of his heart disease (Tr. 215). These records, if any, are not in the Court's transcript and do not appear on the Exhibit List.

9